UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| NEWELL, ET AL. | : | |
| Plaintiffs, | : | Honorable Madeline Cox Arleo |
| v. | : | Civil Action No. 04-1875 (SDW) |
| NAGL MANUFACTURING CO., ET AL. | : | **REPORT AND RECOMMENDATION** |
| Defendants. | : | |

Presently before this Court is the Motion of Defendants, Nagl Manufacturing, Pacer Technology, Richard J. Keating, and Team Technologies, Inc., for attorneys' fees and expenses. Plaintiffs Robert Newell and Andon Brush Company oppose this Motion. For the reasons set forth below, the motion is denied.

**I.      Background**

On April 22, 2004, Plaintiffs Robert L. Newell ("Newell") and Andon Brush Company, Inc. ("Andon") filed their complaint alleging infringement of U.S. Patent No. 6,632,040 (the "040 Patent") against Defendants, Nagl Manufacturing Co., Richard Keating, Team Technologies, Inc., Pacer Technology, and Henkel Consumer Adhesives.[1]  Defendant Nagl, a division of Team Technologies, Inc., is a manufacturer and seller of applicator brushes. Defendant Pacer purchases the brushes from Nagl for use in its "superglue" adhesive products.

---

[1] On December 27, 2004, Plaintiffs voluntarily dismissed their claims against Defendant Henkel.  See Dkt. Entry # 28.

The patent at issue here concerns applicator brushes and is limited to brushes in which the bristles have been flourinated. This process of flourination protects the bristles by increasing their resistance to moisture and creating a barrier. In their complaint, Plaintiffs alleged that brushes manufactured by Nagl infringed the 040 Patent. Essential to Plaintiffs' infringement theory is their claim that the bristles of Nagl brushes were flourinated.

A.    Pre-Suit Testing in February 2004

Prior to filing the complaint, Mr. Newell conducted a preliminary examination of Defendants' brushes by exposing them to air and observing the time it took for the bristles to harden.[2] Declaration of Robert L. Newell ("Newell Dec.") at ¶ 2. By comparing Defendants' bristles to Plaintiffs' bristles, Mr. Newell concluded that they were flourinated. Id. at ¶ 3. On February 5, 2004, Mr. Newell retained a company called, Fluoro-Seal, to test the Defendants' brushes. Id at ¶ 4. In a letter dated February 23, 2004, Fluoro-Seal advised Andon that it detected the presence of flourination on all, but one, of the brushes submitted.[3] Id. at ¶ 6., Ex. B. to Newell Dec.

Defendants, however, contend that Plaintiffs filed their complaint based on inaccurate test results conducted by Fluoro-Seal. They claim that "Fluoro-Seal had never actually tested the bristles of any of the accused brushes," but rather had tested only the stems. The testimony of Paul Banks of Fluoro-Seal confirms that the bristles were not tested due to the size. Paul Banks Deposition

---

[2] According to Mr. Newell, where bristles are subject to flourination, they take longer to harden. See Newell Dec. ¶ 2.

[3] Mr. Burns of Fluoro-Seal stated in that letter: "[O]ut of the sample items sent us, we detected carbon-flourine bonding present on all samples marked 'A' through 'J' except for samples marked 'I.'" Newell Dec., Ex. B. Sample I, according to Andon, was a control sample known not to have been subject to flourination. Declaration of Stacey L. Fernandez ("Fernandez Dec.") ¶ 4.

2

("Banks Dep."), at 89:20-24.[4]  Significantly, however, Mr. Banks testified that, when Fluoro-Seal reported its testing results to Plaintiffs in February 2004, it had not informed Plaintiffs that Fluoro-Seal's testing was limited to the stems of the brushes.  Id at 90:11-15.  Stacy Fernandez of Andon confirmed Fluoro-Seal's failure at the time to advise Andon of this testing limitation.  Fernandez Dec. ¶ 6.  Thus, Plaintiffs were unaware of these facts until revealed by Fluoro-Seal in approximately July 2004 - nearly three months after Plaintiffs commenced this action.

Defendants further allege that Fluoro-Seal notified Plaintiffs the "data was useless" and "of no value," on February 20, 2004.  Defendants cite to a contact log entry, admittedly written by Ms. Fernandez of Andon, detailing a telephone conversation that she had with Jay Burns of Fluoro-Seal.  Ex. F. to Agnes Antonian Declaration ("Antonian Dec."); Stacy Fernandez Deposition ("Fernandez Dep."), at 34:7-13, 44:20-25.  Specifically, the contact log states: "He said the data is useless and only can be understood knowing their equipment."  Fernandez Dep., at 44:20-25.

However, Defendants' reference to that log entry must be understood in the context of Ms. Fernandez's deposition testimony.  Indeed, Defendants omit a critical portion of Ms. Fernandez's testimony from their factual recitation.   Ms. Fernandez testified that she asked Mr. Burns to memorialize Fluoro-Seal's positive test results in writing because Andon wanted reliable "proof" of fluorination before pursuing legal action.  Fernandez Dep., at 39:10-25 - 40:1-13.  The February 20, 2004, contact log entry memorializes her telephone conversation with Mr. Burns wherein she requested documentation supporting the positive test results.  In response, Mr. Burns indicated that the raw testing data could only be understood by an individual with knowledge of Fluoro-Seal's

---

[4] In their motion papers, Defendants only provided limited portions of deposition transcripts.  This Court requested full copies of the deposition transcripts of Paul Banks and Stacy Fernandez, which are referred to throughout this opinion.

equipment. Fernandez Dec., at ¶ 5. During her deposition, Ms. Fernandez explained:

> Well, he didn't just say the data is useless. He said that the data is useless and only could be understood knowing their equipment. And we had a lengthy conversation about the technicality of his equipment, and [it] was over my head in terms of understanding, and that official printouts of those testing results could not be interpreted by anybody except a trained Fluoro-Seal technician. So if he was to provide the records to me, I wouldn't be able to understand what they actually meant, and wouldn't serve the purpose I was seeking, which was for us to have actual results of each of the samples yes or no, or whether they tested positive for the fluorination.

Id. at 45:10-22. Thereafter, Flouro-Seal sent correspondence to Andon, dated February 23, 2004, confirming the presence of carbon-fluorine bonding on all samples submitted for testing, except for one (Sample I). Fernandez Dec., at ¶ 3, Exh. B.

   B.   Post-Suit Testing in June 2004

In June 2004, after filing suit, Plaintiffs sent another set of brush samples to Fluoro-Seal to be tested for the presence of fluorine. Antonian Dec., Ex. N; Newell Dec. ¶ 8. In their brief, Defendants allege that Plaintiffs concealed this round of testing and its results because the testing revealed no presence of fluorination in the sample brushes and, thus, disproved Plaintiffs' infringement claims.

Plaintiffs, however, maintain that Fluoro-Seal returned the samples to Andon without informing Andon of the results. Newell Dec. ¶ 9, Fernandez Dec. ¶ 7. Plaintiffs further claim that they received no information regarding this second round of testing by Fluoro-Seal until the results were disclosed in response to a subpoena served during discovery. The subpoenaed test results reveal that all of the samples submitted for testing, except for one, failed to test positive for flourination. Banks Dep., at 33:12-15. However, as Defendants point out, the bristles again were

not tested. Accordingly, Fluoro-Seal did not report whether the bristles had or had not been fluorinated; rather, Mr. Banks of Fluoro-Seal explained that his company's test method was "incapable [of determining fluorination] because the material [from which the brush applicators were made] is not polyethylene or polypropylene. Our test method is flawed." Banks Dep. at 91:23-25 - 92:1-3.

   C. Testing Following Rule 16 Conference

On July 19, 2004, at the Rule 16 scheduling conference, Defendants advised the Court that there was no competent evidence of infringement. Specifically, as outlined above, Defendants advised that, in February 2004, the stems, but not the bristles, were tested by Fluoro-Seal. This Court stayed discovery to allow Plaintiffs to produce evidence to support their claims of infringement, including evidence that Nagl's product was treated with fluoride. Andon then retained Dr. Theodore Davidson and his firm Polymer Processing Institute ("PPI") for further testing. Newell Dec. ¶ 10. In November of 2004, Plaintiffs provided the Court and Defendants with Dr. Davidson's report which found small amounts of flourine in the bristles of Defendants' brushes. Id. ¶ 11. Dr. Davidson's report concluded that he had detected the presence of flourine in all the samples submitted. Ex. C to Newell Dec. The report indicated, however, only trace levels on defendant Henkel's brush. Based on those findings and an affidavit submitted by Henkel, Plaintiffs dismissed Henkel from the suit. Newell Dec. ¶ 12.

In response, Defendants subpoenaed the deposition of Dr. Davidson as well as a corporate representative of PPI pursuant to Fed. R. Civ. P. 30(b)(6). On March 1, 2005, Plaintiffs sought a protective order claiming that such information was protected by the attorney work product doctrine. See Antonian Dec, Ex. M. On May 9, 2005, this Court granted Plaintiffs' application for a

protective order, which was not appealed. Dkt. Entry # 31.

     D.     <u>Dismissal of Complaint</u>

On December 13, 2005, Plaintiffs filed a Motion to Dismiss its complaint citing financial difficulties. Plaintiffs maintained their allegations of infringement. Defendants sought leave to request attorneys' fees and expenses. By Order dated September 19, 2006, the Court granted Plaintiffs' Motion with prejudice, dismissed Defendants' counterclaims seeking a declaration of non-infringement and invalidity without prejudice, and granted Defendants leave to seek attorneys' fees and expenses. In the order granting dismissal, Judge Wigenton referred Defendants' motion for attorneys' fees and expenses to this Court for a Report and Recommendation. Dkt. Entry # 43.

     E.     <u>Motion For Attorneys' Fees</u>

In the instant motion, Defendants allege that Plaintiffs filed this suit without reliable evidence of infringement. Moreover, Defendants contend that Plaintiffs continued to pursue their infringement claims, despite evidence to the contrary and, thus, unjustifiably prolonged the litigation. In short, Defendants claim that Plaintiffs engaged in litigation misconduct amounting to bad faith and had no reasonable basis for their claims of infringement. Plaintiffs, on the other hand, maintain that Defendants infringed the 040 Patent and deny any allegations of concealment or litigation misconduct warranting the imposition of attorneys' fees and expenses. They contend that they at all times had a good faith basis for their allegations of infringement.

## II.     Legal Standard

The general rule is that "each party bears its own costs."[5]  Refac International, Inc. v. IBM Corporation, et al., 710 F. Supp. 569, 570 (D. N.J. 1989).  A statutory exception to this rule can be found in 35 U.S.C. § 285, which provides:  "The court in exceptional cases may award reasonable attorneys' fees to the prevailing party."  It is within the discretion of the Court to award fees and expenses. Machinery Corp. of America v. Gullfiber AB, 774 F.2d 467, 471 (Fed. Cir. 1985).  "Only after the prevailing party has established the exceptional nature of the case by clear and convincing evidence should the district court decide whether or not to make the award."  Id.  Thus, pursuant to § 285, "[t]he decision to award attorneys' fees is within the discretion of the district judge and should be made only after the prevailing party has established by clear and convincing evidence the exceptional nature of the case."  Matsushita Battery Industrial Co. v. Energy Conversion Devices, 1997 U.S. Dist. LEXIS 21016, at * 23 (D. Del. 1997); see ADM Corp. v. Speedmaster Packing Corp., 525 F.2d 662, 664 (3d Cir. 1975).  Even if the Court finds the case to be exceptional, it still may decline to award fees based on the totality of the circumstances.  Id.

The purpose of such an award is to deter frivolous patent litigation and to compensate the prevailing party for its expenses in such a frivolous suit.  See Samsung Electronics Co., Ltd. v. Rambus, Inc., 440 F. Supp. 512, 518 (E.D. Va. 2006).  A case is exceptional if it involves "'inequitable conduct during prosecution of a patent, misconduct during litigation, vexatious or unjustified litigation, or a frivolous suit.'"  Refac International, Inc., 710 F. Supp. at 570 (quoting Bayer Aktiengesellschaft v. Duphar International Research B.V., 738 F.2d 1237, 1242 (Fed. Cir.

---

[5] This is often called the "American Rule."  See Machinery Corp. of America v. Gullfiber AB, 774 F.2d 467, 471 (Fed. Cir. 1985).

1984)). A suit is frivolous if there is no objectively reasonable basis for filing suit. Id. Therefore, a defendant can recover fees and expenses if a plaintiff intentionally, recklessly, or with gross negligence filed and prosecuted a baseless infringement action." McClarin Plastics, Inc. v. LRV Acquisition Corp., 1999 WL 507188, at *4 (Fed. Cir. 1999). "The gross negligence standard has been defined as requiring willful, wanton, or reckless misconduct, or evidence of 'utter lack of all care.'" Machinery Corp. of America v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985) (internal citations omitted).

**III.   Analysis**

First, the court must determine whether the party seeking fees and expenses is the "prevailing party." Here, "[t]he defendants, having obtained from plaintiffs a voluntary dismissal with prejudice, are considered prevailing parties." Bioxy, Inc. v. Birko Corp., 935 F. Supp. 737, 744 (E.D.N.C. 1996). Thus, Defendants have met the first requirement for obtaining attorneys' fees.

Second, section 285 requires that the prevailing party demonstrate by clear and convincing evidence that the case is exceptional. To be considered exceptional, the court must find egregious misconduct. "Absent misconduct in the conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." Brooks Furniture Mfg., Inc. v. Dutailier International, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005). As previously noted, exceptional cases are those that involve "litigation misconduct; vexatious, unjustified, and otherwise bad faith litigation; a frivolous suit or willful infringement." Epcon Gas Systems, Inc. v. Bauer Compressors, Inc., 279 F.3d 1022, 1034 (Fed. Cir. 2002); see Standard Oil v. American Cyanamid Co., 774 F.2d 448, 455 (Fed. Cir.

1985).

Having reviewed all the papers submitted by the parties, this Court finds that Defendants have failed to establish by clear and convincing evidence that this case is "exceptional" within the meaning of 35 U.S.C. § 285. Defendants have not shown that Plaintiffs "knew, or should have known that this suit was frivolous." Refac International, Inc., 710 F. Supp. at 570. Plaintiff Newell's Declaration demonstrates that Plaintiffs had at least a subjective good faith basis for filing suit. Newell attests that Plaintiffs' own pre-filing examination of Defendants' bristles and the test first performed by Flouro Seal led to the reasonable conclusion that Andon's patent was being infringed. See Newell Dec. ¶¶ 2-4. Although post-filing information demonstrated the inadequacy of such tests, Plaintiffs did appear to have both a subjective and a reasonably objective basis for filing suit in April 2004.

Defendants contend that Plaintiffs were aware that the pre-filing test was "useless" because only the stems of the brushes were tested, to the exclusion of the bristles. Defendants rely on the February 20, 2004, contact log entry as Plaintiffs' admission of the inaccuracy of the pre-suit testing results. This, however, is not entirely accurate. First, as set forth above,
Mr. Banks of Fluoro-Seal admitted under oath that his company did not inform Andon that the tests were limited to the stems of the samples provided. Banks Dep., at 90:11-15. This testimony is consistent with Plaintiffs' contention that they were unaware of the flaw in the first round of testing. Second, Defendants' reliance on Mr. Burns' comment that the pre-filing test was "useless" is misplaced. As Ms. Fernandez's Declaration attests, Mr. Burns commented that the raw testing data would be "useless" to Ms. Fernandez (who lacks a technical background) as it could only be understood by an individual with knowledge of Fluoro-Seal's equipment. Fernandez Dec., at ¶ 5.

9

Therefore, with regard to the pre-filing test, Plaintiffs did have an objectively reasonable basis for filing suit.

Similarly, Defendants can not establish that this case is exceptional by citing to the post-filing testing performed in June 2004. Defendants allege that Plaintiffs concealed this round of testing and its results because the testing revealed there was no fluorination present in the sample brushes and, thus, disproved Plaintiffs' infringement claims. Plaintiffs, however, demonstrated that Fluoro-Seal returned the samples to Andon without informing Andon of the results. Newell Dec. ¶ 9, Fernandez Dec. ¶ 7. Indeed, Plaintiffs claim that they received no information regarding this second round of testing by Fluoro-Seal until the results were disclosed in response to a subpoena served during discovery. Accordingly, Plaintiffs claim that they did not rely upon such tests as a factual basis for bringing or maintaining the patent infringement suit.

Most significantly, during litigation, Plaintiff did not rely exclusively on Fluoro-Seal's testing. In November 2004, Dr. Davidson of PPI found minimal amounts of fluorination on the brushes. Thus, Plaintiffs have come forward with sufficient, though minimal, evidence that they had both subjective good faith and a reasonably objective basis for believing Defendants were infringing their patent, and their continuing this lawsuit. Based on those facts, the Court can not conclude that litigation was brought or maintained in "subjective bad faith," and was "objectively baseless."

Contrary to Defendants' contention, the fact that the original testing was later proven to be unreliable is not alone a basis for awarding fees and expenses. Rather, the issue is whether it was reasonable for the Plaintiffs to rely on the test at the time. Stated otherwise, Defendants must prove, by clear and convincing evidence, that Plaintiffs <u>knew</u> that there was no fluorination on the bristles and they nonetheless instituted and/or persisted with the litigation. Given the amount of testing here

10

and the ambiguity about what Plaintiffs knew and when they knew it, this Court is satisfied that Defendants have not met their burden.

Defendants also allege that Plaintiffs failed to obtain the advice of counsel before filing the suit. Plaintiffs argue that regardless of their claim of privilege, failure to obtain the advice of counsel does not make an exceptional case. This Court agrees. "Failure to obtain advice of counsel does not conclusively establish . . . a patentee's bad faith or in itself make the case 'exceptional.'" Machinery Corp. of America, 774 F.2d at 473.

Moreover, the fact that Plaintiffs sought dismissal before trial weighs against the imposition of fees and costs. As explained in SL Waber, Inc. v. American Power Conversion Corp., 135 F. Supp. 2d 521, 527 (D.N.J. 1999), "[t]he statutory provision for awarding attorney fees in patent cases is normally invoked only at the end of the litigation. The legislative history of § 285 indicates that Congress intended, even after trial, that it be used sparingly, since it represents a departure from the usual rule . . . ." In SL Waber, the district court denied the defendant's motion for fees where the plaintiff dismissed its infringement claims after discovery. The court rationalized that "[a]fter pretrial discovery revealed the weaknesses of its claims, [the plaintiff] may well have decided in good faith to minimize litigation expense by foregoing its claims and by taking a voluntary dismissal. Such a move should not be discouraged by the threat of imposing attorney fees." Id. Similarly, Plaintiffs here maintain that the sole reason dismissal was sought was because of financial constraints. Without proof of misconduct, this Court rejects Defendants' suggestion that such reason was pretextual.

Despite Defendants' claim that it is Plaintiffs' burden "to come forward with evidence to show that Andon had an objectively reasonable basis to bring suit," section 285 places the burden

on the party seeking attorneys' fees and costs.[6]  Thus, Defendants have the burden of demonstrating by clear and convincing evidence that Plaintiffs engaged in litigation misconduct or that the litigation was so unjustified as to warrant the imposition of fees and costs.   For the reasons set forth above, Defendants have not met that burden.

Finally, the question of whether an award of fees is appropriate is ultimately one of judicial discretion.  The Court "may weigh intangible as well as tangible factors; the degree of culpability of the infringer, the closeness of the question, litigation behavior, and any other facts whereby fee shifting may serve as an instrument of justice."  <u>Serio-US Indus. v Plastic Recovery Techs. Corp.</u>, 459 F. 3d 1311, 1321-22 (Fed. Cir. 2006).  This Court was intimately involved in all aspects of discovery, and in fact <u>ordered</u> plaintiff at the Rule 16 conference to conduct further testing.  Here, weighing all factors, considering the litigation history, the amount of testing that was done and the totality of circumstances, the Court declines to award fees.   While some of the testing done by Plaintiffs was not the most careful or thorough and their conduct may not have been the most "prudent," the Court is nonetheless satisfied that Defendants have not met their burden.  <u>See</u> <u>Machinery Corp. of America</u>, 774 F.2d at 473 (noting that "conduct short of fraud, but in excess of simple negligence is sufficient for deciding that the case is 'exceptional' under § 285.").   The exceedingly high threshold has not been met.

**IV.     <u>Conclusion</u>**

---

[6] Defendants make references to Fed. R. Civ. P. 11.  This motion, however, is for attorneys' fees and costs under § 285.  While Rule 11 requires the challenged party to show an objectively reasonable basis for filing suit, § 285 places the burden on the movant.  Defendants may be correct that Rule 11 violations may, at times, be sufficient to demonstrate litigation misconduct for purposes of § 285, but Defendants still have the burden of proving such violations by clear and convincing evidence.

Defendants have not met the exceedingly high burden of presenting clear and convincing evidence that this case warrants the imposition of attorneys' fees and costs. Therefore, this Court recommends that Defendants' Motion for Attorney's Fees and Expenses be denied.

The parties have ten (10) days from receipt hereof to file and serve objections.

Respectfully submitted,

*s/Madeline Cox Arleo*
**MADELINE COX ARLEO**
**United States Magistrate Judge**

Dated: May 21, 2007
Original: Clerk
cc: Hon. Susan D. Wigenton, U.S.D.J.
    File